IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| v. | )    Cr. No. 05-070T |
| | ) |
| PEDRO GONZALES | ) |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR
### DISCOVERY AND INSPECTION

Comes now the United States of America, by and through its attorneys, Robert Clark Corrente, United States Attorney for the District of Rhode Island, and Stephanie S. Browne, Assistant U.S. Attorney, and hereby responds to defendant's Motion for Discovery and Inspection.

The defendant has filed a far ranging discovery motion. Rule 16 of the Federal Rules of Criminal Procedure requires that the government, upon request of the defendant, either provide or allow the defendant access to specific items. It does not grant the defendant full access to the government's files nor is it an open invitation for the defendant to obtain any and all information he may desire. Furthermore, the rule expressly excludes all witness statements and any reports prepared by government agents, except those containing the substance of defendant's statements to a known government agent if the government intends to use those statements at trial, from the discovery process. Fed.R.Crim.P. 16(a)(2); United States v. LiCausi, 167 F.3d 36, 50-51 (1st Cir. 1999).

The bulk of the items requested by the defendant in his
Motion for Discovery and Inspection are either beyond the scope
of the discovery required by both Rule 16 and the Court's order
or fall squarely within the category of materials specifically
exempted from the discovery process by Rule 16(a)(2).  That
exemption clearly applies to the defendant's demand for the
production of additional reports, statements, tapes, recordings
or other similar materials.  Additionally, compliance with all of
the defendant's requests would also require the government to
disclose the identity of its witnesses, something the government
is simply not required to do at this stage of the proceedings.
That type of disclosure is neither mandated by Rule 16 nor
otherwise required by law, and therefore should not be ordered by
the Court.  United States v. Reis, 788 F.2d 54, 58 (1st Cir.
1986); see also United States v. Edwards, 47 F.3d 841, 843 (7th
Cir. 1995) ("It is well settled that the Constitution does not
require pretrial disclosure of prosecution witnesses.").
Furthermore, even the Brady exculpatory evidence rule does not
require the government to reveal its witnesses' names to the
defendant in advance of trial.    United States v. Adames Santos,
89 F.3d 824 (1st Cir. 1996) (unpublished).  Simply put, the Court
should not allow the defendant to use what purports to be a
motion seeking only the disclosure of exculpatory evidence to
circumvent the discovery limitations imposed by Rule 16.

Although the witness criminal histories or inducements requested by the defendant, if they exist, would potentially fall within the category of impeachment material covered by Giglio, the Courts have long recognized that there is a different standard regarding disclosure of impeachment material under Giglio as opposed to purely exculpatory information under Brady. See, e.g., United States v. Higgs, 713 F.2d 39, 44 (3rd Cir. 1983) ("The Brady material in this case was information that appellees could use on cross-examination to challenge the credibility of witnesses. For that type of material, we think appellees' right to a fair trial will be fully protected if disclosure is made the day that the witness testifies.") (citing cases); United States ex. rel. Lucas v. Regan, 503 F.2d 1, 3 n. 1 (2d Cir.1974) cert. denied, 420 U.S. 939 (1975); United States v. Mariani, 7 F.Supp.2d 556, 563 (M.D.Pa 1998)(citing cases). For instance, the First Circuit has found no prejudice to the defendant where disclosure of a witness' plea and cooperation agreement took place either shortly before trial or even after trial commenced. See United States v. Casas, 356 F.3d 104, 114 (1st Cir. 2004); United States v. Villarman-Oviedo, 325 F.3d 1, 13 (1st Cir. 2003). Most, if not all, of the requests fall within one or more of the following subject matter headings:

## I.   WITNESSES

It is well settled that Rule 16 does not mandate disclosure

of the identities of the government's trial witnesses. United States v. Barrett, 766 F.2d 609 (1st cir. 1985); United States v. Murphy, 480 F.2d 256, 259 (1st Cir. 1973), cert. denied, 414 U.S. 912; Weatherford v. Bursey, 429 U.S. 545, 559 (1977) ("It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably.")

Attempts to amend Rule 16 to compel the disclosure of witnesses have been flatly rejected. In the Conference Report [H.R. Rep. No. 94-414, 94th Cong., 1st Sess. at 12 (1975)] accompanying the 1975 amendments to the Federal Rules of Criminal Procedure, the conferees stated:

> The House version of the bill provides that each party, the government and the defendant, may discover the names and addresses of the other party's witnesses three days before trial. The Senate version of the bill eliminates these provisions, thereby making the names and addresses of a party's witnesses nondiscoverable. The Senate version also makes a conforming change in Rule 16(d)(1). The Conference adopts the Senate version.
>
> A majority of the conferees believe it is not in the interest of the effective administration of criminal justice to require that the government or the defendant be forced to reveal the names and addresses of its witnesses before trial. Discouragement of witnesses, and improper contacts directed at influencing their testimony were deemed paramount concern in the formulation of this policy.

Bare assertions that such disclosure is warranted for preparation of an adequate defense and to ensure a fair trial are

4

not enough.  To the extent that courts have permitted such
disclosures, they have expressly recognized that such discretion
should not be exercised except upon a showing of palpable need.
United States v. Cannone, 528 F.2d 296, 301-302 (2d Cir. 1975);
United States v. Richter, 488 F.2d 170, 174-175 (9th Cir. 1973).
In Cannone, 528 F.2d at 302, the Second Circuit reversed the
trial court's order to disclose witness identities for precisely
such barren allegations (referring to defendant's "abstract,
conclusory claim that such disclosure was necessary to its proper
preparation for trial").  In United States v. Sclamo, 578 F.2d
888, 890 (1st Cir. 1978), the court upheld the trial judge's
denial of witnesses' identities because the defense had failed to
"articulate any compelling need for disclosure other than the
general need to prepare for cross-examination."

## II.   STATEMENTS OF NONWITNESSES

Statements of nonwitnesses are likewise not discoverable.
United States v. Mills, 641 F.2d 785, 789-90 (9th Cir. 1981),
cert. denied, 454 U.S. 902 (granting the government's writ of
mandamus and vacating the trial court's order directing the
government to produce statements of witnesses whom the government
had interviewed but did not intend to call). Accord, United
States v. Cole, 453 F.2d 902, 905 (8th Cir. 1972), cert. denied,
406 U.S. 922; United States v. Penix, 516 F. Supp. at 258.

## III.  GRAND JURY MATTERS

In Douglas Oil Company v. Petrol Stops Northwest, 441 U.S.

5

211, 219 (1979), the Supreme Court described the considerations
mandating the rule of grand jury secrecy and stated that these
considerations are fundamental to the functioning of the grand
jury.

> First, if pre-indictment proceedings were
> made public, many prospective witnesses would
> be hesitant to come forward voluntarily
> knowing that those against whom they testify
> would be aware of their testimony.  Moreover,
> witnesses who appeared before the grand jury
> would be less likely to testify fully and
> frankly, as they would be open to retribution
> as well as to inducements.  There also would
> be the risk that those about to be indicted
> would flee, or would try to influence
> individual grand jurors to vote against
> indictment.  Finally, by preserving the
> secrecy of the proceedings, we assure that
> persons who are accused but exonerated by the
> grand jury will not be held up to public
> ridicule.

Focusing on precisely those reasons, the Court of Appeals
stated in Fund for Constitutional Government v. National Archives
and Records Service, 656 F.2d 856, 869 (D.C. Cir. 1981):

> In order to effectuate these objectives, the
> scope of the secrecy is necessarily broad.
> It encompasses not only the direct revelation
> of grand jury transcripts, but also the
> disclosure of information which would reveal
> the "identities of witnesses or jurors, the
> substance of testimony, the strategy or
> direction of the investigation, the
> deliberations or questions of the jurors and
> the like.

"Grand Jury secrecy, then," wrote Mr. Justice Brennan, "is
'as important for the protection of the innocent as for the
pursuit of the guilty.'  Both Congress and this Court have
consistently stood ready to defend it against unwarranted

intrusion." United States v. Sells Engineering, Inc., 463 U.S.
418, 424-25 (1983).

A defendant seeking pretrial disclosure of grand jury
transcripts must therefore demonstrate a particularized need for
disclosure. Dennis v. United States, 384 U.S. 855, 869-70 (1966);
Walsh v. United States, 371 F.2d 436, 437 (1st Cir.), cert.
denied, 387 U.S. 947 (1967). And such a showing must be very
strong indeed. "We have consistently construed the rule ... to
require a strong showing of particularized need for grand jury
materials before any disclosure will be permitted." United States
v. Sells Engineering, Inc., 463 U.S. at 443 (emphasis added).
The "indispensable secrecy of grand jury proceedings must not be
broken except where there is a compelling necessity." United
States v. Proctor and Gamble Company, 356 U.S. 677, 682 (1958).

The Jencks Act unequivocally states that the defense is not
entitled to the government witnesses' statements until after the
witness has testified on direct examination. Title 18, United
States Code, Section 3500(a). Rule 26(2) of the Federal Rules of
Criminal procedure does not in any way alter the delivery
schedule of those statements. United States v. Litman, 547 F.
Supp. 645, 652 (W.D. Pa. 1982), aff'd, 661 F.2d 17 (3d Cir.
1981), cert. denied, 454 U.S. 1150.

Efforts to override this clear mandate of the Jencks Act
have been systematically rejected. United States v. Strahl, 590
F.2d 10, 13 (1st Cir. 1978), cert. denied, 440 U.S. 918; United
States v. Randmont, 680 F.2d 867, 874 (1st Cir. 1982); United

7

States v. Carter, 621 F.2d at 240 (citing numerous other decisions).

With this backdrop in mind, the Government responds to the specific requests of the defendant as follows:

1.    There are no written or recorded statements made by any defendant in this case.

2.    The Government has provided to each defendant the substance of any oral statements made by that defendant. Attached hereto are the substance of the oral statements made by each defendant.

3.    Counsel is invited to view the evidence at the DEA offices at a mutually agreeable time.

4.    The laboratory tests of the cocaine in this case is attached.  The government will call Christopher Benintendo, the examining chemist, as an expert witness absent a stipulation from all defendants as to the identity, weight, and purity of the substance.

5.    The government objects for the reasons stated in section I above.

6.    The government recognizes its present and continuing obligation under Brady v. Maryland, 373 U.S. 83 (1963).  We have and will continue to turn over to defendants all identified exculpatory material within the meaning of Brady and United States v. Agurs, 427 U.S. 97 (1976), in time for its effective use at trial. United States v. Peters, 732 F.2d 1004, 1009 (1st Cir. 1984).  There is a limit, however, to the scope of material

to which the defense is entitled under Brady and Agurs.

"There is no general constitutional right to discovery in a criminal case, and Brady did not create one." Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Scott, 524 F.2d 465, 467 (5th Cir. 1975) ("This Court and others have recognized that the rule in Brady is not a pretrial remedy and was not intended to override the mandate of the Jencks Act").

The First Circuit has reaffirmed that the discovery required by Brady is limited. In United States v. DeLeo, 422 F.2d 487, 498 (1st Cir. 1970), *cert. denied*, 397 U.S. 1037, this circuit said: "We do not read those cases to authorize extensive pretrial discovery by the defendant." The First Circuit also recognizes that Brady does not require the government to search its files for exculpatory or impeaching evidence, regardless of whether it has the resources to do so. In United States v. Edgewood Health Care Center, Inc., 608 F.2d 13, 15 (1st Cir. 1979), *cert. denied*, 441 U.S. 1045, the court said:

> Nonetheless, Edgewood puts forward the expansive proposition that the prosecution was obliged, on its own initiative, to search all official or semi-official files and materials in any way related to appellant or this action for exculpatory information which, in appellants' words, "may or may not have existed."
>
>         *    *    *
>
> Edgewood has cited, and we have found, no authority for placing such a duty on the government in these circumstances. Appellant simply insists that the supposedly vast resources and the large number of trained personnel available to the prosecutor should have been utilized for Edgewood's benefit to

> facilitate a review of all possibly relevant
> records held by government or government-
> regulated agencies.  This position goes well
> beyond any requirements of the  law.

Further it is clear from Agurs, 427 U.S. at 109-110, that,
in response to a request for exculpatory evidence, the
prosecution does not have a constitutional duty to disclose every
bit of information that might somehow affect the jury's decision:
"The mere possibility that an item of undisclosed information
might have helped the defense, or might have affected the outcome
of the trial does not establish 'materiality' in the
constitutional sense." A showing of materiality is "not
satisfied by a mere conclusory allegation that the requested
information is material to the preparation of the defense."
United States v. Conder, 423 F.2d 904, 910 (6th Cir. 1970), cert.
denied, 400 U.S. 958.  The government is simply not obligated to
provide the defendant with all evidence which might conceivably
assist him in the preparation of his defense. United States v.
LeRoy, 687 F.2d 610, 619 (2d Cir. 1982).

To the extent that the defendant seeks to use Brady as the
basis for discovery of witnesses who might somehow be useful to
the defense, he overreaches.  The cases clearly state that the
government is under no duty to comply with such a request because
it places an impossible burden on the government. United States
v. Moore, 439 F.2d 1107, 1108 (6th Cir. 1971); United States v.
Gonzalez, 466 F.2d 1286, 1288 (5th Cir. 1972); United States v.
Ahmad, 53 F.R.D. 186, 193-94 (M.D. Pa. 1971).  Nor is the

10

government obliged under <u>Brady</u> to furnish a defendant with information which he already has or, with any reasonable diligence, can obtain himself. <u>United States v. Campagnuolo</u>, 592 F.2d 852, 861 (5th Cir. 1979); <u>United States v. Steffen</u>, 641 F.2d 591, 594 (8th Cir. 1981), *cert. denied*, 452 U.S. 943.

The government will provide information concerning rewards, promises, and/or benefits provided to its witnesses at the same time it provides Jencks material to defendant. With that in mind, the following responses are offered:

a. Objection, Hugo Vidal-Rodriguez is not a defendant in this case. There is no exculpatory material concerning any defendant currently known to the government. The government is aware of it's continuing obligation in this regard and will provide to the defense any and all exculpatory material that becomes known.

b. No such persons are known to the government.

c. Objection, for the reasons stated in section I above, the government is not required to identify it's witnesses in advance of trial. If there is any material required to be disclosed under <u>Brady</u>, <u>Giglio</u> or their progeny, which relates to any government witness, the government will disclose it prior to the testimony of that witness.

d. No such agreements exist at this time.

e. No inducements, promises, payments or fees have been made or paid at this time.

f. Objection to identifying government witnesses at this

11

time for the reasons stated in section I above.  Any <u>Giglio</u>
material available for any government witness will be provided to
the defense before that witness testifies.  To date, the
government is unaware of any such information.

      g.  Objection, the requested material falls outside of
that required to be disclosed by Rule 16.

      h.  Objection, the requested material falls outside of
that required to be disclosed by Rule 16.

      i.  None known to date.

      j.  None known to date.

      k.  None known to date.

    7.  No such agreements exist at this time, however, if any
such agreements are created, defense will be provided with copies
of them.

    8.  No government witness has been paid to date.  If any
payments are made to a testifying witness, such information will
be provided to the defense.

    9.  No such inducements or promises have been made to date,
should any be made to any testifying witness, the defense will be
notified as to the particulars.

    10.  No such documents exist at this time, should any such
agreements/arrangements be created in the future with regard to
any testifying witness the defense will be provided with the
particulars.

    11.  The defense is welcome to inspect all of the evidence
which is being maintained by the DEA at it's office.

12. Copies of the search warrants issued in this case have been provided to the defense.

13. The defense is welcome to inspect all of the evidence which is being maintained by the DEA at it's office.

14. There were no "pen registers" obtained in this case.

15. The defense is welcome to inspect all of the evidence which is being maintained by the DEA at it's office.

16. There was no telescopically enhanced surveillance conducted in this case which was the result of any application or order.

17. The apartment at 167/169 Lenox Street, Providence, was searched with the consent of the manager.  A copy of the consent form is attached.

18. There were no observations of these defendants or any property known to be owned, possessed or leased by them from any aircraft.

19. There was no surveillance conducted relative to this case for the period specified in the defense request.

20. There were no interceptions by the government of any conversations to which these defendants were a party.

21. See the response to number 20 above.

22. See the response to number 20 above.

23. See the response to number 20 above.

24. See the response to number 20 above.

25.a. - o.  See the response to number 20 above.

26. The criminal record of each defendant, if it existed,

13

was provided to counsel for that defendant in the discovery
letter sent June 28, 2005.  The government does not intend to
offer any such records at the trial of this matter.  If that
changes, copies of any such records, if they exist, will be
provided to counsel.

27.  There is no evidence known to the government at this
time which falls within Rule 404(b).  If the government becomes
aware of such information concerning this defendant, it will
supply it to his counsel.  The government is unaware of who
Rafael Figueroa is.

28.  No government witness in this case was hypnotized.

29.  Jencks material is not required to be provided until
after a government witness has testified on direct.  18 U.S.C. §
3500.  The government will provide Jencks material on it's
testifying witnesses several days in advance of the trial in this
matter.  The government does not concede that notes are
discoverable but it will ask that agents maintain any currently
existing notes.  Hand written notes of interviews by agents which
are not substantially a verbatim record which has been signed or
verified by a witness are not discoverable. United States v.
Sepulveda, 15 F.3d 1161, 1179 (1st Cir. 1993), cert. denied, 114
S.Ct. 2714 (1994).

30.  The Government objects to this request.  Rule 16 does
not require this disclosure.  The Government will comply with its
Brady obligations. The Government objects to the disclosure of
the requested information including the names and addresses of

14

persons who have knowledge of the case or who have been
interviewed by the Government, and the substance of unrecorded
conversations.  Rule 16 does not require this disclosure.  The
Government will comply with its <u>Brady</u> obligations.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
UNITED STATES ATTORNEY

STEPHANIE S. BROWNE
Assistant U.S. Attorney

15

## CERTIFICATION OF SERVICE

I hereby certify that on this 11th day of July 11, 2005, I served by first class mail, postage prepaid, a copy of the within Government's Response To Defendant's Motion For Discovery and Inspection to the following:

Albert E. Mediei, Jr., Esq.
1312 Atwood Avenue
Johnston, RI 02919

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND


**IN THE MATTER OF**:

JULIAN SAHAGUN RODRIGUEZ
PEDRO GONZALES
FRANKLIN SOTO PENA


Testimony of **MICHAEL STEPHEN NAYLOR**, a witness herein, heard before the APRIL 2005-A TERM GRAND JURY on WEDNESDAY, JUNE 8, 2005, 11:15 A.M., at the John O. Pastore Federal Building, Two Exchange Terrace, Providence, Rhode Island.


**PRESENTED BY**:

ADI GOLDSTEIN, ESQUIRE

ASSISTANT U.S. ATTORNEY


Vivian S. Dafoulas, RMR-CRR
East Greenwich, RI  02818-2064
(401) 885-0992

A.    Yes.    Rodriguez and Gonzales gave us
I.D.s.    I was engaging them somewhat and they
said -- I said, "Is this your real I.D.?"    And they
laughed and smiled and said no.

When we spoke with Franklin Soto Pena, Task
Force Agent Colanduono was asking him if it was him.
He provided him originally with an I.D. which was a
social security card and a Dominican passport of
Heriberto Gonzalez Candelaria with his date of birth
of 11/13/61.

After we had a Spanish-speaking officer come on
scene, and sometime later on, he admits to Task
Officer Colanduono that he's actually Franklin Soto
Pena.

* * *

A.    As far as I could tell, Franklin Soto Pena
definitely did.    The other two made an appearance
that they did.    They made a laughing joke that that
was not really them.

**U.S. Department of Justice**
Drug Enforcement Administration

## REPORT OF INVESTIGATION

| 1. Program Code N/A | 2. Cross File | Related Files | 3. File No. ▮▮▮▮▮ | 4. G-DEP Identifier ▮▮▮▮▮ |
|---|---|---|---|---|
| 5. By: TFA Michael S. Naylor  At: Providence R/O | ▮▮▮▮▮▮ | | 6. File Title Gonzalez-Vargas, Javier | |
| 7. ☐ Closed ☐ Requested Action Completed  ☐ Action Requested By: | | | 8. Date Prepared 06/10/05 | |

9. Other Officers: G/S MacIsaac, TFA Colanduono, S/A Morrissey, S/A Tully (Boston) S/A Schiffer , TFA Brian Mulcahey, TFA Jacobson, RAC Kleczkowski, TFA Angell, Sgt. J. Donelly

10. Report Re: Arrest of 3 defendants and seizure of 62 Kilograms of cocaine Exhibit #1 and Exhibits N1 thru N6.

\* \* \*

▮▮ While still at 167/169 Lenox, GS MacIsaac and TFO Colunduono attempted to interview the three suspects with the assistance of Providence Police Det. Henry Remolina who speaks Spanish. All three were advised of there constitutional rights by Det. Remolina. Neither Rodriguez of Gonzalez gave any statement. Soto agreed to be interviewed▮▮▮▮ginally identified himself as Heriberto ▮▮▮▮ Candelaria ▮▮▮▮▮ by showing TFA Colanduono a SS card (▮▮▮▮▮) and a Puerto Rico birth certificate. After further questioning he identified himself as Franklin Soto Pena. Soto denied knowing Gonzalez or Rodriguez and stated he was only asking them for a cigarette lighter. Soto also denied looking inside the Maxima but when he was told agents observed him doing it he changed his story and said that he was looking for a lighter in the back of the Maxima. Soto denied knowing anything about the cocaine. None of the three suspects had a lighter or cigarettes on them.

\* \* \*

| 11. Distribution:  Division NEFD/ SARI  District  LAFD  Other  Boston FD | 12. Signature (Agent)  TFA Michael S. Naylor | 13. Date ▮▮▮▮▮ |
|---|---|---|
| | 14. Approved (Name and Title)  Dan MacIsaac  Group Supervisor | 15. Date ▮▮▮▮▮ |

DEA Form - 6
(Jul. 1996)

**DEA SENSITIVE**
**Drug Enforcement Administration**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

**U.S. Department of Justice**
**Drug Enforcement Administration**

**REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED**

| 1. HOW OBTAINED (Check) | 2a. FILE NO. | 2b. PROGRAM CODE | 3. G-DEP ID |
|---|---|---|---|
| ☐ Purchase   ☒ Seizure   ☐ Free Sample<br>☐ Lab. Seizure   ☐ Money Flashed   ☐ Compliance Sample (Non-Criminal)<br>☐ Internal Body Carry   ☐ Other (Specify) | CH 05-0044 | N/A | XGC1L |

| 4a. WHERE OBTAINED (City, State/Country) | 4b. DATE OBTAINED | 5. FILE TITLE |
|---|---|---|
| Providence RI | 6-7-05 | Gonzalez-Vargas , Javier |

| 6a. REFERRING AGENCY (Name) | 6b. REFERRAL | | |
|---|---|---|---|
| | ☐ Case No. OF   ☐ Seizure No.<br>No. | 7. DATE PREPARED | 8. GROUP NO. |

| 9. Exhibit No. | 10. FDIN (10 characters) | 11. ALLEGED DRUGS | 12. MARKS OR LABELS (Describe fully) | APPROX. GROSS QUANTITY | | 15. Purchase Cost |
|---|---|---|---|---|---|---|
| | | | | 13. Seized | 14. Submitted | |
| 1 | 2005103517 | Cocaine | 6 boxes containing 64 packages containing white powder. | | 72.05 2 ml | 00.00 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**16. WAS ORIGINAL CONTAINER SUBMITTED SEPARATE FROM DRUG ?**   ☐ NO (included above)   ☒ YES (If Yes, enter exhibit no. and describe original container fully)

**REMARKS:**

Exhibit#1 was seized inside 3 duffle bags (N-3) from a vehicle in front of 167/169 Lenox Street in Providence RI. The contents field-tested positive for cocaine. The exhibit was seized by TFA Naylor, transported to the Providence R/O, processed as evidence and stored in the evidence vault ,it was subsequently transported to the NERL for analysis.

| 17. SUBMITTED BY SPECIAL AGENT (Signature) | 18. APPROVED BY (Signature & Title) |
|---|---|
| TFA Michael S. Naylor | G/S Dan MacIsaac |

**LABORATORY EVIDENCE RECEIPT REPORT**

| 19. NO. PACKAGES | 20. RECEIVED FROM (Signature & Date) | 21. Print or Type NAME and TITLE |
|---|---|---|
| 6 Box | | TFA Michael Naylor |

| 22. SEAL | 23. RECEIVED BY (Signature & Date) | 24. Print or Type NAME and TITLE |
|---|---|---|
| ☐ Broken ☐ Unbroken<br>06/27/05 | 6/14/05 pm | Irene Milo |

**LABORATORY REPORT**

**25. ANALYSIS SUMMARY AND REMARKS**

Exhibit #1 contains cocaine hydrochloride (HCl)
Gross Wt. = 85.29 Kg    Net Wt. = 61.44 Kg

*3.0 g removed for a special program.
*50.53 Kg separated for destruction pending written notification.

| 26. Exhibit No. | 27. Lab. No. | 28. ACTIVE DRUG INGREDIENT (Established or Common Name) | CONCENTRATION | | | 32. AMT. OF PURE DRUG | 33. RESERVE |
|---|---|---|---|---|---|---|---|
| | | | 29. Strength | 30. Measure | 31. Unit | | |
| 1 | 173304 | cocaine HCl | 88 | % | | 54.06 Kg | 61.43 Kg |
| | | | | | | | |
| | | | | | | | |

| 34. ANALYST (Signature) | 35. TITLE | 36. DATE COMPLETED |
|---|---|---|
| CHRISTOPHER BENINTENDO | FORENSIC CHEMIST | 06/23/05 |

| 37. APPROVED BY (Signature & Title) | 38. TITLE | 39. LAB. LOCATION |
|---|---|---|
| THOMAS M. BLACK | LABORATORY DIRECTOR | NEW YORK |

**DEA Form - 7**
(Sept. 1996)    Previous edition dated 4/90 may be used until stock is exhausted.    1 - Prosecution

# CONSENT TO SEARCH

TIME _2055 hrs._

DATE _6-7-05_

PLACE _167 Lenox Ave_

I, _Belkis Rollins_ having been informed of my right not to have a search made of the premises and/or vehicle described below without a search warrant and of my right to refuse to consent to such a search, do authorize _____

_____, of the _____ Police Department to conduct a complete search of my premises and/or vehicle described as _167-169 Lenox Ave. Basement_

I give my consent to this search knowing that if any incriminating evidence is found it can be used against me in Court.

The police officer(s) named above has my permission to take any letters, papers, or other property from my premises and/or vehicle.

I give this written permission to the police officer(s) named above voluntarily and without threats or promises of any kind.

WITNESSES: _____

_Belkis Roll___ SIGNATURE

FORM 7